McCANNON *v.* TOLFREE.

1. BANKS AND BANKING — DEPOSITS — EVIDENCE — GREAT WEIGHT OF EVIDENCE.

In an action against a private bank for the amount of a savings account, where plaintiff's proofs are convincing that she was possessed of the moneys which she asserts and that she deposited the same in defendant bank as she claims and as shown by her book, and defendant claims

On admissibility, upon testimony of bookkeeper, of entries in a party's books of account based upon oral or written statements of others, see note in 36 L. R. A. (N. S.) 899.

On admissibility in evidence of knowledge of person making the entry, see note in 52 L. R. A. 595.

that it erroneously gave plaintiff credit on both her commercial and savings accounts for a single deposit, but does not satisfactorily explain why the claimed error was not detected for nearly a year and a half, a verdict in favor of defendant, *held*, against the great weight of the evidence.

2. SAME—EVIDENCE—BOOKS OF ACCOUNT—ADMISSIBILITY.
Before the books of defendant bank were admissible in evidence, it was bound to show that they were accurate and contained all the items of account.

3. SAME—WITNESSES—CROSS-EXAMINATION.
Where defendant's cashier testified that in giving his testimony as to the deposit he was relying on the books of the bank, and that he had no independent recollection of the details thereof, the trial court was in error in not permitting plaintiff to cross-examine him as to errors made in the accounts of other customers.

Error to Ogemaw; Smith (Guy E.), J. Submitted January 29, 1924. (Docket No. 91.) Decided April 10, 1924.

Assumpsit by Hannah McCannon against John Tolfree, John W. Livingstone, and D. Eugene Tolfree, copartners as Tolfree, Livingstone & Company, for the amount of a savings deposit. Judgment for defendants. Plaintiff brings error. Reversed.

*William T. Yeo*, for appellant.

*Earl R. Chapin*, for appellees.

BIRD, J. Plaintiff sued defendants, who are copartners operating a private bank at West Branch, to recover on a savings deposit she theretofore made in the bank. The bank defended on the ground that it had erroneously given her a double credit for the deposit in question, one credit in her commercial account and another in a savings account. The matter was tried out before a jury and they took defendants'

view of the matter.    Plaintiff assigns error because the verdict of the jury was contrary to the weight of the evidence.    This assignment will be considered first, and will furnish a sufficient statement of the case.

1. Plaintiff is an elderly woman, engaged in baking and selling her goods.    She is also engaged in selling woolen underwear for a Bay City company.    On June 7, 1919, she went to the bank where she had had a commercial account for several years, and deposited, as she claims, $950 in currency in her commercial account, and the same was duly entered in her book. She also deposited a draft for $1,398.31, together with currency enough to make the deposit up to $1,400. The draft was one which she had recently received from the New York Mutual Life Insurance Company for matured insurance.    She requested the bank to deduct from this $1,400 the sum of $450, a balance which she was owing it for Liberty bonds, and requested a savings certificate for the balance, $950. The savings certificate remained without any interruption until November, 1920, when she called upon the bank for interest, and the same was paid to her. At that time she deposited $50 more and took a savings book for $1,000.    A few days thereafter the cashier of defendant telephoned plaintiff and requested her to come to the bank with her books and papers.    She complied and was told that an error had been made in crediting her commercial account with $950, that only one $950 was deposited on June 7, 1919, and that, inasmuch as she had checked out most of her commercial account, the savings book had been charged with the deficit, and that little, or nothing, was owing her on the savings account.    This makes the issue in the case.    Did plaintiff deposit $950 in currency which was placed to the credit of her commercial account?    There is no dispute that the draft from the insurance company was deposited, that the $450,

227—Mich.—2.

balance on the Liberty bonds, was paid, and that there was a balance due her of $950, for which she was given a savings certificate.   The issue really gets down to the question as to whether she deposited $950 on her commercial account on the day in question.

For the purpose of showing that she was possessed of sufficient currency to make the deposit in her commercial account, plaintiff showed by Laura Tremper that a short time prior to June 7th she paid plaintiff $535 on an $800 indebtedness which she owed her. Her daughter, Mrs. Austin, testified that she saw her mother in possession of a large roll of bills just prior to the date of deposit.   Plaintiff accounts for the balance of the $950 as coming from her business which she was carrying on and an item of nearly $200 paid her by a fire insurance company for injury to her building.

To support the bank's theory of erroneous credit the cashier, who was on duty when the deposit was made, was sworn.   He testified from the records of the bank, but appeared to have no personal recollection of the details of the transactions.   Added to this were certain inferences which defendant drew from the records or lack of records.

Plaintiff's proofs are convincing that she was possessed of the moneys which she asserts, and that on June 7th she deposited the same in her commercial account, as the entry in her book by defendant indicates.   This commercial account was balanced monthly for nearly a year and a half before the error was discovered.   There appears to be no dispute that plaintiff deposited the draft from the life insurance company, and that the savings certificate was issued to her.

We have read the record with care and are persuaded that counsel's assignment that the verdict is contrary to the weight of the evidence is well taken.

In arriving at this conclusion we have been much influenced by the fact that the claimed error was not discovered by the bank before the lapse of 1 year, 5 months and 19 days from the day of deposit. The entry was made by defendant in plaintiff's book containing her commercial account, the stub showed the issuance of the certificate of deposit, and a deposit slip made by the cashier showed the transaction. Therefore, the records of the bank must have shown, on the evening of June 7th, that plaintiff had been credited twice with $950, once in the commercial account and once in the savings account. The commercial account, following this, was more or less active, and plaintiff's book was balanced from time to time, and interest was paid on the savings certificate in November, 1920, and at that time the certificate was surrendered and a savings book issued in its stead, and a small deposit was made afterwards in the savings account. With the modern and improved system of bank book-keeping we think this should have been discovered very much sooner than a year and a half. We think it may be assumed that if the bank had a modern system of book-keeping the error would have been discovered on the evening of the same day the deposits were made. If defendant's theory is true the bank had given plaintiff a double credit, whereas only a single deposit had been made. This would make the bank short $950, and just how that deficit could have gone on for nearly a year and six months without detection is not clear to us. This phase of the case on a re-trial should receive close scrutiny, and the reasons for not detecting the error should be explained in a satisfactory manner to the jury.

2. Complaint is made because the trial court would not permit plaintiff's counsel to cross-examine the cashier as to certain errors made with accounts of other customers. The cashier had testified only a

moment before that he was relying on the books of the bank in giving his testimony, that he had no independent recollection of the details of the deposits. Among the things which the jury was asked to believe was the accuracy of the bank books, records and certain inferences drawn therefrom. The defendant was bound to show before the books were admissible that they were accurate and contained all the items of account. *Seventh Day Adventist Publishing Ass'n* v. *Fisher*, 95 Mich. 274. Under the old rule in force, before parties could testify defendant would have been obliged to show the accuracy of its own books by people who had dealt with it. *Montague* v. *Dougan*, 68 Mich. 100. There could be no objection to its showing the accuracy of its books in that manner now if it chose to do so. This being true, the plaintiff had a right to show that the books were not accurate, and we know of no better way that she could show their inaccuracy than by showing it by transactions of other people who had accounts with the bank. It was a proper subject of cross-examination of one who had the books of the bank under his control, and the trial court was in error in excluding it. We think it will be unnecessary to consider the remaining assignments.

For the errors pointed out the judgment will be reversed, with costs to the plaintiff. New trial ordered.

CLARK, C. J., and MCDONALD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. SHARPE, J., did not sit.